IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>　　　　　　　　　　　Defendants. | Case No. 1:25-cv-465-TNM<br><br>**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF OF JONATHAN CROSMER AND KATHLEEN CROSMER IN SUPPORT OF PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

INTRODUCTION

COME NOW Jonathan Crosmer and Kathleen Crosmer, married, pro se, and respectfully submit their Motion for Leave to File *Amicus Curiae* Brief in Support of Plaintiff's Complaint for Declaratory and Injunctive Relief, pursuant to Local Rule 7(o).

ARGUMENT

**I. Movants are landlords for refugee tenants who fell behind on rent because of the government's actions described in Plaintiff's Complaint.**

The Crosmers own and are landlords of exactly one house, located in Lexington, Kentucky. The tenants of this house are a family of five Syrian refugees served by Kentucky Refugee Ministries, Inc. ("KRM"), a Kentucky non-profit corporation. KRM is in a similar position to the United States Conference of Catholic Bishops ("USCCB"), having relied on funds from the US Refugee Admissions Program to support their refugee clients as they prepare to work in the US. In a letter dated February 3, 2025, KRM informed the Crosmers that due to the suspension of the US Refugee Admissions Program, "We have been told that KRM is unlikely to be reimbursed for the work we already completed throughout the month of January under federal

1

RECEIVED
FEB 24 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

agreements. Hence, both KRM and its clients are facing sudden shortfalls due to the suspension of signed government agreements and the reneging on payments owed to us." Previously, KRM had been assisting the Syrian tenants with paying the rent. As a result of the suspension of the US Refugee Admissions Program, KRM is no longer able to provide rental assistance. Thus the tenants have fallen behind on the rent owed to the Crosmers, who were thereby harmed by the government's actions.

**II. An *amicus* brief is desirable to further show the Court how the government's actions negatively affected members of the public.**

When their tenants failed to pay rent on time, the Crosmers were placed in a difficult position. They could have (1) attempted to evict the refugees for breach of the lease and left them homeless, or (2) absorbed the cost themselves. The first option would have been inhumane, thus the Crosmers were forced to choose the second. Therefore, the government's actions in this case have harmed both the refugee tenants and the Crosmers as landlords.

**III. Movants' position is not adequately represented by existing parties because no party represents landlords of refugee tenants.**

Plaintiff is a non-profit organization serving refugees, and Defendants are government agents and agencies. Neither party represents landlords (such as the Crosmers) of refugee tenants.

**IV. Matters asserted by movants will be relevant to showing inter alia the balance of harms and the public interest weigh in favor of injunctive relief.**

The parties have raised the issues of public interest in resettlement of refugees and the President's interest in effectuating his agenda. Def.'s Mem. (ECF No. 14) at 16. Defendants suggest the "court 'should pay particular regard for the public consequences' of injunctive

relief". *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 26 (2008)). The Crosmers humbly suggest that the Court consider how an injunction would appropriately relieve refugee tenants (served by organizations like the KRM and USCCB) and their landlords from harm caused by the government's actions. While the Crosmers are but "mom and pop landlords" of a single property, likely many landlords and tenants are similarly affected, since "more than 6,700 refugees assigned to USCCB . . . were still within their 90-day transition period." Pl.'s Complaint (ECF No. 1) at 4 ¶ 6.

**V. No party opposes this motion.**

In email correspondence with counsel for all parties: The United States Conference of Catholic Bishops indicated that it consents to the filing of the *amicus* brief, and the government takes no position.

## CONCLUSION

For the foregoing reasons, the Crosmers respectfully move this Honorable Court grant them leave to file an *amicus curiae* brief, to be filed within three (3) days. Such period will not prejudice either the parties or this Court.

February 24, 2025                                              Respectfully Submitted,

*/s/ Jonathan Crosmer*   */s/ Kathleen Crosmer*

Jonathan Crosmer and Kathleen Crosmer
7347 Northmoor Drive
St. Louis, MO 63105
(501) 339-6050
jonathancrosmer@hotmail.com