UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. CONFERENCE OF CATHOLIC BISHOPS,<br><br>       Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF STATE, et al.,<br><br>       Defendants. | Civil Action No. 25-0465 (TNM) |

**DEFENDANTS' SUPPLEMENT TO THEIR OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES .......................................................................................................... ii
ARGUMENT .................................................................................................................................. 1
    I.       Plaintiff Fails to Demonstrate A Likelihood of Success on the Merits. ................. 1
            A.      Plaintiff Fails to Establish This Court Has Jurisdiction ............................. 1
            B.      The State Department Has Not Acted Contrary to Law ............................ 4
            C.      The State Department's Termination Is Not Arbitrary and Capricious ...... 9
    II.      Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm. ............ 10
    III.     The Balance of Harms and the Public Interest Weigh Against Relief. ................. 11
CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Allina Health Servs. v. Sebelius*,
746 F.3d 1102 (D.C. Cir. 2014) ............................................................................................... 3

*Assicurazioni Generali S.p.A. v. Black & Veatch Corp.*,
362 F.3d 1108 (8th Cir. 2004) ................................................................................................. 9

*Coggeshall Dev. Corp. v. Diamond*,
884 F.2d 1 (1st Cir. 1989) ........................................................................................................ 4

*Ingersoll-Rand Co. v. United States*,
780 F.2d 74 (D.C. Cir. 1985) ................................................................................................... 3

*Kidwell v. Dep't of Army*,
56 F.3d 279 (D.C. Cir. 1995) ................................................................................................... 2

*Maine Community Health Options v. United States*,
590 U.S. 296 (2020) ................................................................................................................ 1

*Norton v. S. Utah Wilderness All.*,
542 U.S.55 (2004) ............................................................................................................... 7, 8

*PPG Indus., Inc. v. United States*,
52 F.3d 363 (D.C. Cir. 1995) ................................................................................................... 3

*Rocky Ford Hous. Auth. v. Dep't of Agric.*,
427 F. Supp. 118 (D.D.C. 1977) ............................................................................................ 10

*Rogers v. United States*,
14 Cl. Ct. 39 (1987) ................................................................................................................. 2

*Spectrum Leasing Corp. v. United States*,
764 F.2d 891 (D.C. Cir. 1985) ............................................................................................. 1, 3

*Torres v. Walker*,
356 F.3d 238 (2d Cir. 2004) .................................................................................................... 9

*United States v. Ringling*,
988 F.2d 504 (4th Cir. 1993) ................................................................................................... 9

**Statutes**

2 U.S.C. § 682(1)(A) ................................................................................................................... 8

2 U.S.C. § 683(a) ........................................................................................................................ 8

8 U.S.C. § 1522(a) ............................................................................................................... passim

8 U.S.C. § 1522(a)(1)(A) ................................................................................................. 2, 4, 5, 11

8 U.S.C. § 1522(a)(1)(A)(iii) ..................................................................................................... 5

8 U.S.C. § 1522(b)(1)(A) ................................................................................................... 5, 6, 8

8 U.S.C. § 1522(b)(1)(B) ............................................................................................................ 6

8 U.S.C. § 1522(c)(1)(A) ............................................................................................................ 7

8 U.S.C. § 1522(e)(1) .................................................................................................................. 6

Pub. L. 118-47 ............................................................................................................................ 8

**Regulations**

2 C.F.R. § 200.340(a)(4) ............................................................................................................ 9

Defendants, by and through the undersigned counsel, respectfully file this supplement to their opposition to Plaintiff's motion for preliminary injunction (ECF No. 30, "Pl.'s Mot."), first supplemental memorandum in support (ECF No. 22, "Pl.'s 1st Supp. Mem."), and second supplemental memorandum in support (ECF No. 30-2, "Pl.'s 2d Supp. Mem."). For the reasons discussed below, the Court should deny Plaintiff's motion.

## ARGUMENT

**I.     Plaintiff Fails to Demonstrate A Likelihood of Success on the Merits.**

    **A.     Plaintiff Fails to Establish This Court Has Jurisdiction**

Foremost, the suspension termination of the Agreements leaves Plaintiff one remedy—to submit invoices for work past due and allow the Department to assess the invoices under the terms of the Agreements. In *Maine Community Health Options v. United States*, 590 U.S. 296 (2020), the Supreme Court explained that suits involving "prospective declaratory and injunctive relief" in the context of a "complex ongoing relationship," may be brought under the APA, but suits that "remedy[] particular categories of past injuries or labors" instead are properly brought under the Tucker Act—*i.e.*, in the Court of Federal Claims. *Id*. at 327 (internal quotation marks and citations omitted). Here, there is no longer an ongoing relationship—it ended on February 27, 2025—the effective date of the termination. As such, Plaintiff's claims—for past work under the Agreements—"lies in the Tucker Act's heartland." *Id*. at 327.

First, Plaintiff is incorrect its "claims are grounded in regulatory and statutory duties—not contracts." Pl.'s 2d Supp. Mem. (ECF No. 30-2) at 2. The sole basis for Plaintiff's claim is grounded in the Cooperative Agreements (the "Agreements"). Plaintiff's purported right—to engage in resettlement of refugees—did not "exist[] prior to and apart from rights created under the [Agreements]." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). The Refugee Act of 1980 does not create a right for a state or nonprofit to have an agreement with

the government to provide resettlement of refugees. It merely authorizes the government to enter into one. Indeed, as discussed below, the section Plaintiff relies, 8 U.S.C. § 1522(a)(1)(A) does not require the Secretary of State to take any action whatsoever. *See infra* § I.B.1; *see also* Defs.' Opp'n (ECF No. 25) at 21–22.

Moreover, Plaintiff's reliance on the Impoundment Control Act fares no better. "Congress did not intend to create a private cause of action [in the Impoundment Control Act] in cases of unauthorized impoundments." *Rogers v. United States*, 14 Cl. Ct. 39, 50 (1987), *aff'd*, 861 F.2d 729 (Fed. Cir. 1988). Further, any right conferred to Plaintiff by 2 C.F.R. Part 200 Subparts A through F and 2 C.F.R. Parts 600 and 601 only arise from the Agreements. Cooperative Agmt. SPRMCO24CA0342 (ECF No. 5-4) at Std. Terms & Conds. for Fed. Awards. But for the Agreements, Plaintiff would not be able claim the Department has withheld a reimbursement under the Agreement.[1]

Second, Plaintiff's attempt to evade the jurisdictional limits of the Tucker Act fail. While Plaintiff may use the language of "classic equitable remedies," Pl.'s 2d Supp. Mem. (ECF No. 30-2) at 3, the Court must look to the complaint's "substance, not merely its form." *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995). Indeed, to follow Plaintiff's argument, if a party simply requesting an order to pay money due under a contract makes this case an APA suit, then every contract case is an APA suit. But here, the essence of Plaintiff's claims is seeking an application of the Agreements' terms and payment thereunder. Plaintiff requests the following equitable relief:

> 3. Enjoin—temporarily, preliminarily, and permanently—Defendants from taking any action enforcing or implementing against USCCB the Refugee Funding

---

[1] For these reasons, Plaintiff's reliance on *Kidwell v. Department of Army*, 56 F.3d 279 (D.C. Cir. 1995) fails. In *Kidwell*, Plaintiff had separate statutory right to seek review of his discharge under 10 U.S.C. § 1552 before the Army's Board for Correction of Military Records.

2

> Suspension, Refugee Funding Termination, Rubio Memo, or Foreign Aid Executive Order;
>
> 4. Enjoin—temporarily, preliminarily, and permanently—Defendants from issuing or reissuing other letters or taking any other actions that have a materially similar effect;

Am. Compl. (ECF No. 29) at Prayer for Relief. This relief seeks the Court to force the government to continue to perform under the Agreements. "In other words, [Plaintiff] seeks the classic contractual remedy of specific performance." *Spectrum Leasing*, 764 F.2d at 894. And, to prevent parties from "avoiding this remedy restriction [on an inability of a court to grant specific performance against the government, [the D.C. Circuit] ha[s] indicated that a complaint involving a request for specific performance must be resolved by the Claims Court." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985) (citations omitted).

Moreover, Plaintiff's request for declaratory relief, to "[h]old unlawful and set aside the Refugee Funding Suspension and Refugee Funding Termination (and, to the extent it applies to USCCB, the Rubio Memo)," Am. Compl. (ECF No. 29) at Prayer for Relief, is not of "considerable value" apart from and is "negligible in comparison with the potential monetary recovery," *Kidwell*, 56 F.3d at 284, Plaintiff might obtain in subsequent proceedings under the Tucker Act, which is the only potentially applicable waiver of sovereign immunity. In fact, the declaratory judgment Plaintiff seeks here has no independent value. That is because, even were the Court to grant the declaratory judgment Plaintiff seeks, the normal remedy for an APA violation would include remand back to the Department with or without vacatur of the challenged action. *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014); *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency[.]")). Such relief would not remedy the purported impact to

Plaintiff's mission—a mission which size and scope appears wholly dependent on the funding Plaintiff receives under the Agreements. And, it is the monetary damages related to the Agreements that forms any basis for Plaintiff's standing in this action.

Third, Plaintiff's assertion, "this case must remain in district court because the Court of Federal Claims cannot provide the relief most important for USCCB," is unpersuasive. Pl.'s 2d Supp. Mem. (ECF No. 30-2) at 4. Plaintiff's specific relief—an order to continue the Agreements—is unavailable. "Federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989); *see B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727–28 (2d Cir. 1983) ("[A]n action seeking specific performance of a contract with the Government may not be brought in a district court to avoid the Tucker Act's limitation of relief to money judgments.").

### B. The State Department Has Not Acted Contrary to Law

Plaintiff asserts, "Congress has imposed (with the President's assent) two independent restrictions on the Executive Branch's ability to suspend funding for refugee resettlement." Pl.'s Mem. (ECF No. 5-2) at 15. Plaintiff is incorrect.

#### 1. Refugee Act

Plaintiff continues to conflate the Secretary of State's discretionary provision of a program of initial resettlement with Congress's direction to the Director of the Office of Refugee Resettlement concerning the provision of the services described in 8 U.S.C. § 1522(a)(1)(A).

First, Plaintiff's misapprehends the language of 8 U.S.C. § 1522. Plaintiff's suit is predicated on its assertion that Plaintiff has an enforceable right to the Agreements and, thus, can press that right through an APA action to force the Department to continue the Agreements. But nowhere does section 1522 mandate that the government enter into grants, agreements, or contracts for refugee resettlement. Specifically, section 1522(a)(1)(A) begins "In providing assistance under

4

this section . . ." 8 U.S.C. § 1522(a)(1)(A).  Here, Congress has directed that, if the government chooses to provide "assistance under this section," the Director of the Office of Refugee Resettlement must ensure the provision of assistance adheres to the limits outlined.  The language does not confer a right on refugees, much less on Plaintiff or similar nonprofits, but, instead, places limitations on the Director.  For example, section 1522(a)(1)(A)(iii) states that the Director shall "insure that cash assistance is made available to refugees in such a manner not to discourage their economic self-sufficiency . . . " 8 U.S.C. § 1522(a)(1)(A)(iii).  This language clearly indicates that Congress did not intend section 1522(a) to be a rights-conferring provision, *i.e.*, a guarantee that refugees will get cash assistance.  Rather, Congress used narrowing language directing the Director to ensure that the provision of cash assistance is structured in such a way that it avoids having the refugees become dependent

      Second, Plaintiff is incorrect that "[s]ection 1522(a)'s requirements [] flow down to the initial-resettlement program." Pl.'s 2d Supp. Mem. (ECF No. 30-2).  Section 1522(a)(1)(A) states:

> In providing assistance under this section, the Director shall, to the extent of available appropriations, (i) make available sufficient resources for employment training and placement in order to achieve economic self-sufficiency among refugees as quickly as possible, (ii) provide refugees with the opportunity to acquire sufficient English language training to enable them to become effectively resettled as quickly as possible, (iii) insure that cash assistance is made available to refugees in such a manner as not to discourage their economic self-sufficiency, in accordance with subsection (e)(2), and (iv) insure that women have the same opportunities as men to participate in training and instruction.

8 U.S.C. § 1522(a)(1)(A).  Missing though from the listed actions is a program for initial resettlement or any discussion of agreements with resettlement agencies.  *Id*.

      Moreover, even if the Court finds the resettlement services outlined in section 1522(a) are required, section 1522's language and structure makes clear that those services, overseen by the Director of the Office of Refugee Resettlement, are separate from and complementary to the discretionary initial resettlement services authorized by section 1522(b) and administered by the

5

State Department. *See, e.g.*, 8 U.S.C. § 1522(b)(1)(A) (stating the program of initial resettlement "shall be provided in coordination with the Director [of the Office of Refugee Resettlement]'s provision of other assistance."). Nowhere in section 1522 did Congress require the program of initial resettlement. Indeed, 8 U.S.C. § 1522(b)(1)(A) only authorizes the Secretary "to make grants to, and contracts with, public or private nonprofit agencies for initial resettlement (including initial reception and placement with sponsors) of refugees in the United States." 8 U.S.C. § 1522(b)(1)(A).

Further, the services provided under the program of domestic resettlement overseen by the Director are available to each refugee upon admission into the United States. The Director of Office of Refugee Resettlement provides cash assistance from admission up to twelve months and employment assistance and English language learning from admission up to five years. *See* 45 CFR Part 400, Subparts E and I; Extending Refugee Cash Assistance and Refugee Medical Assistance from 8 months to 12 months, 87 Fed. Reg. 17,312 (Mar. 28, 2025); 8 U.S.C. § 1522(e)(1). In compliance with Section 1522(a), the Director is currently providing these services through grants and cooperative agreements. Decl. of Andrew Gradison (Mar. 5, 2025) ¶¶ 4–10 (attached hereto as Ex. A).

Third, Plaintiff is incorrect that Congress granted the President the authority to modify the official responsible for the services described in section 1522(a)(1)(A). Pl.'s 2d Supp. Mem. (ECF No. 30-2) at 6–7. The plain language of section 1522(b) makes clear that the President may modify the official responsible for the program of initial resettlement—not the official responsible for the program of domestic resettlement. 8 U.S.C. § 1522(b)(1)(B) ("If the President determines that the Director should not administer the program [of initial resettlement], the authority of the Director under the first sentence of subparagraph (A) shall be exercised by such officer as the President

6

shall from time to time specify."). In addition, the remaining subsections of section 1522 make clear that only the Director of the Office of Refugee Resettlement retains responsibility for administering the program of domestic resettlement and is authorized to make grants or enter into contracts to affect the services listed in section 1522(a)(1)(A). *See* 8 U.S.C. §§ 1522(c)(1)(A) ("The Director is authorized to make grants [], and enter into contracts. . (i) to assist refugees in obtaining the skills which are necessary for economic self-sufficiency . . .; (ii) to provide training in English . . .; and (iii) to provide [when appropriate] health (including mental health) services, social services, educational and other services."), (d)(2)(A) ("The Director is authorized to provide assistance, [] grants. [] and contracts . . . for the provision of child welfare services."); (e)(1) ("The Director is authorized to provide assistance, [] grants. [] and contracts . . . for 100 per centum of the cash assistance and medical assistance.").

Finally, Plaintiff is incorrect that "this Court can order [Secretary of State and the Director of the Office of Refugee Resettlement] to comply with [the obligations under Section 1522(a)]." Pl.'s 2d Supp Mem. (ECF No. 30-2) at 8. Foremost, Plaintiff does not bring a challenge under the APA or the Mandamus Act for an unlawful withholding, nor could it, because the Secretary has no mandatory, non-discretionary duty to act. *See supra*. Moreover, Plaintiff's relief, to "[e]njoin Defendants to comply with their statutory and regulatory obligations, including those under the Refugee Act of 1980 to provide initial-resettlement services to the refugees in USCCB's programs," Am. Compl. (ECF No. 29) at Prayer for Relief, is unavailable. *See* 5 U.S.C. § 706(2) (limiting relief to "hold unlawful and set aside agency action."). Indeed, in this APA action, the Court cannot direct "how [the agency] shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S.55, 63 (2004).

7

Further, Plaintiff would lack standing to bring a challenge to enforce such a challenge to enforce 8 U.S.C. § 1522(a). Plaintiff's purported injury solely arises from the termination of its cooperative agreements with the State Department, which the Secretary entered into pursuant to 8 U.S.C. § 1522(b)(1)(A). Section 1522(b)(1)(A) does not require the Secretary to act, and, if the Secretary decides to enter into an agreement, does not require the Secretary to enter into an agreement with any specific party. Again, the Court cannot direct the Secretary how to act as Plaintiff demands—to continue with the cooperative agreements. *See S. Utah*, 542 U.S. at 63. As such, the Court could not redress Plaintiff's injury.

2. <u>Impoundment Control Act</u>

Plaintiff is incorrect that the termination "is either a "withholding or delaying [of] the obligation or expenditure of budget authority," 2 U.S.C. § 682(1)(A) (a "deferral"), or "the termination of authorized projects or activities for which budget authority has been provided, 2 U.S.C. § 683(a) (a "rescission")." Pl.'s 2d Supp. Mem. (ECF No. 30-2) at 8. And, Plaintiff is incorrect that the termination of its cooperative agreements is a "permanent refusal to spend appropriated funds for resettlement assistance mandated by law." *Id*. The appropriation, titled Migration and Refugee Assistance, authorizes:

> For necessary expenses not otherwise provided for, to enable the Secretary of State to carry out the provisions of section 2(a) and (b) of the Migration and Refugee Assistance Act of 1962 (22 U.S.C. 2601), and other activities to meet refugee and migration needs; salaries and expenses of personnel and dependents as authorized by the Foreign Service Act of 1980 (22 U.S.C. 3901 et seq.).

Pub. L. 118-47, 138 Stat. 744 (Mar. 23, 2024). The appropriation though does not require or otherwise direct the Secretary to expend funds to provide a program of initial resettlement or to enter into a cooperative agreement. Nonetheless, the Department is continuing to expend funds under the appropriation, paying for the salaries of personnel in the Migration Bureau.

8

Moreover, even if Plaintiff is correct—that the appropriation mandates expenditures for a program of initial resettlement, there has been no indefinite suspension. The Foreign Aid Order requires, a "90-day pause" pending "reviews of such programs for programmatic efficiency and consistency with United States foreign policy." Foreign Aid Order § 3(a).

### C. The State Department's Termination Is Not Arbitrary and Capricious

Foremost, Plaintiff seeks to impermissibly interpose an APA review standard on the terms of the Agreements. As discussed above, this is a contract dispute, and a "central tenet of contract law is that no party is obligated to provide more than is specified in the agreement itself." *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993); *see Torres v. Walker*, 356 F.3d 238, 245 (2d Cir. 2004) ("If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are mandated by the unambiguous terms of the agreement itself." (citation omitted)); *Assicurazioni Generali S.p.A. v. Black & Veatch Corp.*, 362 F.3d 1108, 1116–17 (8th Cir. 2004) ("The enforcement of contracts according to their unambiguous terms, however, serves an important purpose in the law. . . Where an agreement is clear, the parties are entitled to rely on an expectation that it will be enforced as written.").

The Agreements state, "any award may be terminated . . . [b]y the Department, to the greatest extent authorized by law, if the award no longer effectuates the program goals or agency priorities." Cooperative Agrmt. (SPRMCO24CA0342-M001) (ECF No. 5-4) at Std. Terms & Conds. for Fed. Awards ¶ V(2). On February 27, 2025, the Department provided the required written notice consistent with relevant regulation and specified that Plaintiff's awards no longer effectuated agency priorities. 2 C.F.R. § 200.341(a); *see also* Term. Ltrs (ECF No. 27). Put simply, the Agreements do not require the Department to provide the explanation Plaintiff demands.

9

Moreover, Plaintiff misapprehends the clause "to the extent authorized by law" in the regulations. 2 C.F.R. § 200.340(a)(4) states, "The Federal award may be terminated . . [by] the Federal agency pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). The clause may limit the agency's authority to terminate, but not in the manner Plaintiff demands, namely to interpose the APA's requirements on an agency before it can terminate an agreement or contract. In addition, as discussed above, the Refugee Act does not create a right to the Agreements that would limit the Department's authority to terminate. *See supra* § I.B.1. And, the Impoundment Control Act does not create a private right to enforce. *See Rocky Ford Hous. Auth. v. Dep't of Agric.*, 427 F. Supp. 118, 134 (D.D.C. 1977). Nonetheless, as discussed above, the termination of the Agreements does not violate the Refugee Act or the Impoundment Control Act. *See supra* § I.B.

As such, the State Department's termination was not arbitrary and capricious.

## II.     **Plaintiff Cannot Establish a Likelihood of Immediate Irreparable Harm.**

Plaintiff can claim no irreparable harm absent an injunction because the Department terminated the Agreements. As such, the only relief now available to Plaintiff is money damages should the parties be unable to resolve any payment disputes through any available administrative channels. Moreover, to the extent Plaintiff's mission is harmed, the size and scope of Plaintiff's mission related to the program of initial refugee resettlement was always predicated on the Agreements—but the Agreements are no longer in force. Plaintiff cannot claim irreparable harm for the portion of its mission that has ceased.

Lastly, the injunction entered in *Pacito v. Trump*, Civ. A. No. 25-0255 (W.D. Wash.), which only addressed the January 24, 2025, suspension, does not impact this case because the Department has terminated the Agreements. *See id.*, Order (ECF No. 45).

As such, the Court should find that Plaintiff has not established irreparable harm.

### III. The Balance of Harms and the Public Interest Weigh Against Relief.

Plaintiff is incorrect, "The equities and public interest favor enabling USCCB to keep helping the refugees the government assigned to it." Pl.'s 2d Supp. Mem. (ECF No. 30-2) at 10.

Importantly, there is no public interest served by forcing the government to continue to operate under a contract. Here, the Secretary has terminated the Agreements. Yet, Plaintiff demands that this Court order specific performance under the Agreements, forcing the government to remain a party to contract that it has chosen to terminate.

Moreover, Plaintiff is incorrect that the government is not helping refugees. As discussed above, the Director of Office of Refugee Resettlement is currently funding grants and agreements to provide the services described in 8 U.S.C. § 1522(a)(1)(A). *See supra*.

Thus, the balance of the equities weighs in favor of the Government and relief should be denied.

\*   \*   \*

## CONCLUSION

For the reasons stated above and in Defendants' briefs, Defendants respectfully request that the Court deny Plaintiff's motion for emergency relief.

Dated:   March 5, 2025
        Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  /s/ *Joseph F. Carilli, Jr.*
    JOSEPH F. CARILLI, JR.
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2525

*Counsel for the United States of America*