# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE;<br><br>MARCO RUBIO, in his official capacity as Secretary of State, Department of State;<br><br>BUREAU OF POPULATION, REFUGEES, AND MIGRATION, Department of State;<br><br>ADAM ZERBINOPOULOS, in his official capacity as Senior Bureau Official, Bureau of Population, Refugees, and Migration, Department of State;<br><br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;<br><br>ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, Department of Health and Human Services;<br><br>MELLISSA HARPER, in her official capacity as Acting Director, Office of Refugee Resettlement, Department of Health and Human Services,<br><br>*Defendants.* | Case No. 1:25-cv-465-TNM<br><br>**REPLY IN SUPPORT OF AMENDED MOTION FOR PRELIMINARY INJUNCTION** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

ARGUMENT .......................................................................................................................... 1

    I.   This Court Has Jurisdiction.......................................................................................... 1

    II.   The Suspension and Termination Violate the Refugee Act ............................................ 3

    III.   The Government's Remaining Arguments Fail ................................................................ 4

CONCLUSION ....................................................................................................................... 5

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Allina Health Servs. v. Sebelius*,
  746 F.3d 1102 (D.C. Cir. 2014) ............................................................................................... 2

*\*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) .............................................................................................................. 4, 5

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) .............................................................................. 2

*\*Cobell v. Norton*,
  240 F.3d 1081 (D.C. Cir. 2001) ........................................................................................... 2, 4

*\*Crowley Gov. Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ............................................................................................ 1, 5

*Great-West Life & Annuity Insurance Company v. Knudson*,
  534 U.S. 204 (2002) ................................................................................................................. 2

*Kidwell v. Department of the Army*,
  56 F.3d 279 (D.C. Cir. 1995) .................................................................................................... 2

*Maine Community Health Options v. United States*,
  590 U.S. 296 (2020) ................................................................................................................. 2

*Make the Rd. N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) .................................................................................................. 5

*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) .................................................................................................. 2

*Perry Capital LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) .................................................................................................. 1

*Sharp v. Weinberger*,
  798 F.2d 1521 (D.C. Cir. 1986) ................................................................................................ 1

*Spectrum Leasing Corp. v. United States*,
  764 F.2d 891 (D.C. Cir. 1985) .................................................................................................. 1

*\*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
  967 F.2d 598 (D.C. Cir. 1992) .............................................................................................. 1, 2

**Statutes**

2 U.S.C. § 683 ................................................................................................................................ 5

5 U.S.C. § 702 ................................................................................................................................ 5

5 U.S.C. § 703 ............................................................................................................................ 2, 4

5 U.S.C. § 706 ............................................................................................................................... 2

8 U.S.C. § 1522 ..................................................................................................................... 3, 4, 5

Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102 (1980) ................................................... 4

**ARGUMENT**

**I.     This Court Has Jurisdiction**

This an APA case, not a Tucker Act case, for three independent reasons. *First*, USCCB seeks an order setting aside and enjoining enforcement of the Suspension and Termination because they violate multiple statutes and regulations; USCCB is *not* asserting breach of contract, asking for money damages, or seeking an order directing the government to fulfill its agreements. The government ignores—it does not even cite—D.C. Circuit precedent explaining how claims alleging statutory violations may be brought in district court "even when the claims depend on the existence and terms of a contract." *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 610 (D.C. Cir. 1992); *see Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986); *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106–07 (D.C. Cir. 2022).

The government instead asserts that USCCB's rights do not exist "prior to and apart from" those created by its agreements. Opp. 1 (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)). The government thus assumes that district courts lack jurisdiction where a contract is the "[b]ut for" cause of the plaintiff's claim. Opp. 2. But that ignores the D.C. Circuit's subsequent and repeated holdings that jurisdiction in district court lies for statutory and regulatory claims "even when the claims depend on the existence and terms of a contract," so long as they are not "founded *only* on a contract." *Transohio*, 967 F.2d at 609–10 (emphasis added); *see also Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017). In *Spectrum*, moreover, no law required the government to pay—just its contract. 764 F.2d at 894. USCCB's claim, by contrast, is that once the government has admitted refugees and placed them in USCCB's care, the Refugee Act, Impoundment Control Act, APA, and federal regulations prevent the government from suddenly halting funding for essential services to those refugees.

*Second*, USCCB does not seek contract remedies like damages or specific performance but an order setting aside discrete agency actions—the Suspension and Termination—and requiring the government to comply prospectively with its statutory and regulatory duties. Setting aside an agency action may have the natural (and permissible) consequence of releasing funds to a plaintiff down the road. *See Bowen v. Massachusetts*, 487 U.S. 879, 892–96 (1988). But even if USCCB *were* seeking specific performance, a district court *may* issue "an order forcing the government to obey the terms of a contract." *Transohio*, 967 F.2d at 610; *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 971 (D.C. Cir. 1982). The government's contrary out-of-circuit cases (at 4) are unavailing.[1]

The government tries to distinguish *Kidwell v. Department of the Army*, 56 F.3d 279 (D.C. Cir. 1995), by claiming that the relief USCCB requests would result only in a declaration or a remand. Opp. 3. But "vacatur is the normal remedy" for APA violations, *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014), and this Court can enjoin the government to comply with its statutory duties, 5 U.S.C. §§ 703, 706. Either vacatur or an injunction would confer "non-monetary relief"—enabling USCCB to keep helping its refugees—that has "'considerable value' independent of any future potential for monetary relief." *Kidwell*, 56 F.3d at 284.

*Third*, USCCB seeks prospective injunctive relief not available in the Court of Claims. The government argues that the Termination means there "is no longer an ongoing relationship" that justifies APA jurisdiction, citing *Maine Community Health Options v. United States*, 590 U.S. 296 (2020). Opp. 1. But the Termination *itself* is inconsistent with the government's statutory and

---

[1] In *Great-West Life & Annuity Insurance Company v. Knudson*, the Court held that specific performance was unavailable *between private parties* under a statute that authorized "equitable relief." 534 U.S. 204, 209–10 (2002). But equity does allow specific performance "to prevent future losses that . . . [are] incalculable," *id.* at 211, and to stop officials' violations of federal law, *Transohio*, 967 F.2d at 610; *see Cobell v. Norton*, 240 F.3d 1081, 1108–09 (D.C. Cir. 2001).

2

regulatory obligations, and USCCB requests "prospective, nonmonetary relief to clarify future obligations" of the sort that *Maine* held belongs in district court. 590 U.S. at 327.

## II. The Suspension and Termination Violate the Refugee Act

The Refugee Act requires the government promptly to provide the services in Section 1522(a) to all admitted refugees during their initial-resettlement periods. The government claims that Section 1522(a) creates not funding obligations but "limitations on the Director." Opp. 5. Its view seems to be that "providing assistance under this section"—including establishing any initial-resettlement program or any resettlement program *at all*—is completely optional, such that Congress's reticulated requirements for services like employment and English training to ensure refugees become "self-sufficien[t]" and "effectively resettled as quickly as possible" can be disregarded if the government decides to provide no assistance whatsoever. 8 U.S.C. § 1522(a).

That interpretation cannot be squared with the Act's text and structure, which confirm that assisting admitted refugees is not discretionary. The Act aims to "provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted." Pub. L. No. 96-212, § 101(b), 94 Stat. 102, 102 (1980). Section 1522 implements that goal, using mandatory language that assumes the government will provide initial-resettlement assistance: The government "*shall develop and implement* . . . policies and strategies for the placement *and resettlement* of refugees," 8 U.S.C. § 1522(a)(2)(B) (emphasis added), and "*shall* develop a system of monitoring the *assistance provided under this section*," *id.* § 1522(a)(7) (emphasis added). These duties would not make sense if resettlement assistance were optional. Section 1522(a) thus *requires* the government to provide certain resettlement assistance to recent refugees, and its phrase "under this section" means that its requirements apply to the program of initial resettlement under Section 1522(b). Section 1522(b) "authorize[s]" the government to provide

3

initial-resettlement assistance through partnerships or by itself; it does not vitiate the government's obligation to provide the assistance required for refugees to become self-sufficient.

The government concedes that the Secretary of State, by virtue of presidential designation, "exercise[s]" the "authority of the Director" in implementing the initial-resettlement program. Opp. 6–7 (quoting 8 U.S.C. § 1522(b)(1)(B)). But it continues to claim that the Director's 1522(a) obligations do not travel with that authority. That argument ignores Section 1522(b)(1)(A)'s requirement that grants be made "consistent with the objectives of this subchapter"—which include Section 1522(a)'s requirements. The government points to the Director's authorization to provide certain services required by Section 1522(a) under provisions of Section 1522(c), (d), and (e). Opp. 7. But those provisions authorize distinct programs and just confirm that Section 1522(a)'s requirements flow to the rest of the section; nothing suggests that the government must "[e]ffect the services listed in section 1522(a)(1)(A)" under Section 1522(c), (d), and (e) but *not* (b). *Id.* When Congress wanted to carve out subsection (b) from Section 1522(a)'s requirements, it did so expressly. *See* 8 U.S.C. § 1522(a)(4)(B). The government's position also would mean that in implementing the initial-resettlement program (but not Section 1522's other programs), it would be relieved of *all* of Section 1522(a)'s obligations, including requirements for where a refugee is "initially placed or resettled." *Id.* § 1522(a)(2)(C). It offers no explanation for that bizarre result.

Finally, the government ignores blackletter law that USCCB has a cause of action to enjoin "violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); 5 U.S.C. § 703. Courts can, and regularly do, compel agencies to conform to statutory requirements. *See, e.g.*, *Cobell v. Norton*, 240 F.3d 1081, 1108–09 (D.C. Cir. 2001).

### III. The Government's Remaining Arguments Fail

***Impoundment Control Act.*** The government is wrong that as long as it spends some money

4

from an appropriation, there has been no deferral or rescission. Opp. 8. The government has still "terminat[ed]" an "authorized project[] . . . for which budget authority has been provided." 2 U.S.C. § 683. USCCB has a cause of action under *Armstrong* and the APA to enjoin violations. Even though the Act grants a (non-exclusive) cause of action to the Comptroller General, that does not "*by itself*, preclude the availability of equitable relief." *Armstrong*, 575 U.S. at 329.

*Arbitrary and Capricious*. The government cites no authority for the proposition that the APA's reasoned-decisionmaking requirements do not apply whenever a contract is involved; it cites only general contracts cases. Opp. 9. Rather, the APA applies to "agency action" generally, 5 U.S.C. § 702; there is a "'strong presumption'" of reviewability, *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 624 (D.C. Cir. 2020); and the D.C. Circuit has applied the APA to agency action that interferes with payments the government owes under a contract, *see Crowley*, 38 F.4th at 1102.

*Irreparable Harm*. The government claims USCCB cannot show irreparable harm because its agreements have been terminated, Opp. 10, but USCCB's theory is that the Termination *itself* irreparably harms its mission. And the Suspension continues to cause irreparable harm by preventing the reimbursement of expenses USCCB would use to serve the refugees in its program.

*Equities*. The government's claim that no public interest lies in forcing it to continue under a contract is unsupported. While it asserts that the Director of ORR is currently providing services under Section 1522(a), its Declaration confirms that ORR is *not* reimbursing USCCB; ORR has "paused" funding to USCCB and three other grantees since February 3, 2025, without explanation. Gradison Decl. 3. The Declaration nowhere suggests that *anyone* is providing essential services to the thousands of refugees assigned to USCCB and still in their initial-resettlement periods.

## CONCLUSION

This Court should grant USCCB's motion for a preliminary injunction.

March 6, 2025

Respectfully submitted,

/s/ David W. Casazza

William Quinn (D.C. Bar No. 1601853)
Shannon Eckman (D.C. Bar No. 90024504)**
UNITED STATES CONFERENCE OF CATHOLIC BISHOPS
3211 Fourth Street, N.E.
Washington, DC 20017
(202) 541-3300
WQuinn@usccb.org

Dhananjay Manthripragada*
  (D.C. Bar No. 990448)
Nick Harper (D.C. Bar No. 144707)
David W. Casazza (D.C. Bar No. 1046918)
Connor P. Mui* (D.C. Bar No. 90009004)
Aly Cox (D.C. Bar No. 1780473)
Laura Stanley* (D.C. Bar No. 90008623)
Hunter Mason* (D.C. Bar No. 90021049)
Audrey Payne* (D.C. Bar No. 90028352)

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
DManthripragada@gibsondunn.com
NHarper@gibsondunn.com
DCasazza@gibsondunn.com
CMui@gibsondunn.com
ACox@gibsondunn.com
LStanley@gibsondunn.com
HMason@gibsondunn.com
APayne@gibsondunn.com

*pro hac vice
**pro hac vice forthcoming