APPEAL,CASREF,TYPE−D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25−cv−00465−TNM</u>
### *Internal Use Only*

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS
v. UNITED STATES DEPARTMENT OF STATE et al
Assigned to: Judge Trevor N. McFadden
Referred to: Magistrate Judge G. Michael Harvey (Settlement)
Cause: 05:551 Administrative Procedure Act

Date Filed: 02/18/2025
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

| | | |
|---|---|---|
| **UNITED STATES CONFERENCE OF CATHOLIC BISHOPS** | represented by | **Dhananjay S. Manthripragada**<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, DC 20036−4504<br>213−229−7366<br>Email: <u>dmanthripragada@gibsondunn.com</u><br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Alyson M. Cox**<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, DC 20036−4504<br>202−955−8500<br>Email: <u>acox@gibsondunn.com</u><br>*ATTORNEY TO BE NOTICED* |
| | | **Audrey Cosette Payne**<br>GIBSON, DUNN & CRUTCHER LLP<br>1700 M Street, N.W.<br>Washington, DC 20036−4504<br>202−955−8500<br>Email: <u>apayne@gibsondunn.com</u><br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Connor Philip Mui**<br>GIBSON, DUNN & CRUTCHER<br>1700 M Street, NW<br>Washington, DC 20895<br>202−480−6719<br>Email: <u>cmui@gibsondunn.com</u><br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Thomas Hunter Mason**
GIBSON DUNN & CRUTCHER, LLC
1700 M St NW
Washington, DC 20036
860−879−6061
Email: hmason@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William James Quinn**
UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS
Office of the General Counsel
3211 Fourth Street NE
Washington, DC 20017
202−541−3304
Email: wquinn@usccb.org
*ATTORNEY TO BE NOTICED*

**David Casazza**
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036−4504
202−887−3724
Email: dcasazza@gibsondunn.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES DEPARTMENT OF STATE**          represented by   **Joseph F. Carilli , Jr.**
                                                                UNITED STATES ATTORNEY'S
                                                                OFFICE
                                                                601 D Street, NW
                                                                Washington, DC 20001
                                                                202−252−2525
                                                                Email: joseph.carilli@usdoj.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**MARCO RUBIO**                                represented by   **Joseph F. Carilli , Jr.**
*in his official capacity as Secretary of*                      (See above for address)
*State, Department of State*                                    *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**JENNIFER DAVIS**                             represented by   **Joseph F. Carilli , Jr.**
*in her official capacity as Principal*                         (See above for address)
*Deputy Assistant Secretary, Bureau of*                         *LEAD ATTORNEY*

2

*Population, Refugees, and Migration,*
*Department of State*
*TERMINATED: 03/03/2025*

**Defendant**

**UNITED STATES DEPARTMENT**                  represented by    **Joseph F. Carilli , Jr.**
**OF HEALTH AND HUMAN**                                         (See above for address)
**SERVICES**                                                   *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**ROBERT F. KENNEDY, JR**                     represented by    **Joseph F. Carilli , Jr.**
*in his official capacity as Secretary of*                     (See above for address)
*Health and Human Services, Department*                        *LEAD ATTORNEY*
*of Health and Human Services*                                 *ATTORNEY TO BE NOTICED*

**Defendant**

**BUREAU OF POPULATION,**                     represented by    **Joseph F. Carilli , Jr.**
**REFUGEES, AND MIGRATION**                                    (See above for address)
*Department of State*                                          *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**ADAM ZERBINOPOULOS**                        represented by    **Joseph F. Carilli , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**MELLISSA HARPER**                           represented by    **Joseph F. Carilli , Jr.**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Amicus**

**JONATHAN CROSMER**                          represented by    **JONATHAN CROSMER**
                                                               7347 Northmoor Drive
                                                               St. Louis, MO 63105
                                                               501−339−6050
                                                               PRO SE

**Amicus**

**KATHLEEN CROSMER**                          represented by    **KATHLEEN CROSMER**
                                                               7347 Northmoor Drive
                                                               St. Louis, MO 63105
                                                               501−339−6050
                                                               PRO SE

**Amicus**

**AMERICA'S FUTURE, ET AL**  represented by  **William Jeffrey Olson**
WILLIAM J. OLSON, P.C.
370 Maple Avenue West
Suite 4
Vienna, VA 22180
(703) 356−5070
Fax: (703) 356−5085
Email: wjo@mindspring.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/18/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC−11487351) filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Department of State, # 3 Summons Rubio, # 4 Summons Bureau of Population, Refugees, and Migration, # 5 Summons Davis, # 6 Summons Department of Health and Human Services, # 7 Summons Kennedy, # 8 Summons Attorney General, # 9 Summons US Attorney's Office, # 10 Exhibit A, # 11 Exhibit B, # 12 Exhibit C)(Casazza, David) (Entered: 02/18/2025) |
| 02/18/2025 | 2 | LCvR 26.1 CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Casazza, David) (Entered: 02/18/2025) |
| 02/18/2025 | 3 | NOTICE OF RELATED CASE by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. Case related to Case No. 1:25−cv−400, and 1:25cv402. (Casazza, David) Modified on 2/19/2025, added related case (mg). (Entered: 02/18/2025) |
| 02/19/2025 | | Case Assigned to Judge Amir H. Ali. (zmtm) (Entered: 02/19/2025) |
| 02/19/2025 | 4 | SUMMONS (8) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 02/19/2025) |
| 02/19/2025 | 5 | MOTION for Temporary Restraining Order *and Preliminary Injunction* by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support, # 3 Declaration Canny Declaration, # 4 Exhibit A − Cooperative Agreement 1, # 5 Exhibit B − Cooperative Agreement 2, # 6 Exhibit C − Suspension Letter, # 7 Exhibit D − USCCB Letter, # 8 Exhibit E − PRM Letter 1, # 9 Exhibit F − PRM Letter 2, # 10 Declaration Areiyaee Declaration)(Casazza, David) (Entered: 02/19/2025) |
| 02/19/2025 | 6 | Case randomly reassigned to Judge Trevor N. McFadden. Judge Amir H. Ali is no longer assigned to the case. (ztnr) Modified on 2/19/2025 to indicate random reassignment.(ztnr) (Entered: 02/19/2025) |
| 02/19/2025 | 7 | NOTICE of Appearance by Alyson M. Cox on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Cox, Alyson) (Entered: 02/19/2025) |
| 02/19/2025 | | NOTICE of Hearing: The parties shall take notice that a hearing on the 5 Motion for Temporary Restraining Order and Preliminary Injunction is set for 2/20/2025 at 3:30 PM in Courtroom 2− In Person before Judge Trevor N. McFadden. (hmc) (Entered: |

| | | |
|---|---|---|
| | | 02/19/2025) |
| 02/19/2025 | 8 | NOTICE of Appearance by Joseph F. Carilli, Jr on behalf of All Defendants (Carilli, Joseph) (Entered: 02/19/2025) |
| 02/19/2025 | | MINUTE ORDER: Defendants' opposition filing, if any, to Plaintiff's 5 Motion for Temporary Restraining Order and Preliminary Injunction is due by 12:00 p.m. on February 20, 2025. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/19/2025. (lctnm1) (Entered: 02/19/2025) |
| 02/19/2025 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Dhananjay S. Manthripragada, Filing fee $ 100, receipt number ADCDC−11490606. Fee Status: Fee Paid. by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Declaration Exhibit A − Declaration, # 2 Exhibit Certificates of Good Standing, # 3 Text of Proposed Order Proposed Order)(Casazza, David) (Entered: 02/19/2025) |
| 02/19/2025 | 10 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Connor P. Mui, Filing fee $ 100, receipt number ADCDC−11490610. Fee Status: Fee Paid. by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Casazza, David) (Entered: 02/19/2025) |
| 02/19/2025 | 11 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Laura E. Stanley, Filing fee $ 100, receipt number ADCDC−11490646. Fee Status: Fee Paid. by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Casazza, David) (Entered: 02/19/2025) |
| 02/19/2025 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− T. Hunter Mason, Filing fee $ 100, receipt number ADCDC−11490649. Fee Status: Fee Paid. by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Casazza, David) (Entered: 02/19/2025) |
| 02/19/2025 | 13 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Audrey C. Payne, Filing fee $ 100, receipt number ADCDC−11490650. Fee Status: Fee Paid. by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Declaration, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Casazza, David) (Entered: 02/19/2025) |
| 02/20/2025 | 14 | Memorandum in opposition to re 5 Motion for TRO,, filed by UNITED STATES DEPARTMENT OF STATE, MARCO RUBIO, JENNIFER DAVIS, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ROBERT F. KENNEDY, JR, BUREAU OF POPULATION, REFUGEES, AND MIGRATION. (Attachments: # 1 Exhibit A)(Carilli, Joseph) (Entered: 02/20/2025) |
| 02/20/2025 | | MINUTE ORDER granting the Motions for Leave to Appear Pro Hac Vice as to 9 Dhananjay S. Manthripragada, 10 Connor P. Mui, 11 Laura E. Stanley, 12 T. Hunter Mason, and 13 Audrey C. Payne. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCrR 44.5(a).** Click here for instructions. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/20/2025. (lctnm1) (Entered: 02/20/2025) |
| 02/20/2025 | | |

| | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Motion Hearing held on 2/20/2025 re 5 Motion for Temporary Restraining Order *and Preliminary Injunction* filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. Motion as to the Temporary Restraining Order, denied. Case referred for mediation, order forthcoming. Plaintiff's supplemental briefing and declaration due by 2/24/2025. Government's Opposition due by 2/26/2025. Plaintiff's Reply due by 2/27/2025. Motion Hearing as to the Preliminary Injunction set for 2/28/2025 at 10:00 AM in Courtroom 2− In Person before Judge Trevor N. McFadden. (Court Reporter: Jan Dickman.) (hmc) (Entered: 02/20/2025) |
|---|---|---|
| 02/20/2025 | 15 | ORDER denying Plaintiff's 5 Motion for Temporary Restraining Order and Preliminary Injunction as to the request for a temporary restraining order only. See attached Order for details. Signed by Judge Trevor N. McFadden on 2/20/2025. (lctnm1) (Entered: 02/20/2025) |
| 02/20/2025 | | MINUTE ORDER DIRECTLY REFERRING CASE to Magistrate Judge G. Michael Harvey for mediation. The parties are directed to provide the names of their respective negotiators to the Court by 5:00 p.m. on February 21, 2025. The parties should be prepared for in−person mediation next week at a time set by Judge Harvey. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/20/2025. (lctnm1) (Entered: 02/20/2025) |
| 02/21/2025 | 16 | NOTICE of Appearance by Connor Philip Mui on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Mui, Connor) (Entered: 02/21/2025) |
| 02/21/2025 | | CASE DIRECTLY REFERRED to Magistrate Judge G. Michael Harvey for Mediation. (zmtm) (Entered: 02/21/2025) |
| 02/21/2025 | 17 | NOTICE of Appearance by Audrey Cosette Payne on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Payne, Audrey) (Entered: 02/21/2025) |
| 02/21/2025 | 18 | NOTICE of Appearance by Thomas Hunter Mason on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Mason, Thomas) (Entered: 02/21/2025) |
| 02/21/2025 | 19 | MEDIATION STANDING ORDER. Settlement Conference set for 2/27/2025 at 11:00 AM in Courtroom 6− In Person before Magistrate Judge G. Michael Harvey. Signed by Magistrate Judge G. Michael Harvey on 2/21/25. (MFB) (Entered: 02/21/2025) |
| 02/24/2025 | 20 | NOTICE of Appearance by William James Quinn on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Quinn, William) (Entered: 02/24/2025) |
| 02/24/2025 | 21 | TRANSCRIPT OF PROCEEDINGS before Judge Trevor N. McFadden held on February 20, 2025; Page Numbers: 1−54. Date of Issuance: February 24, 2025. Court Reporter: Janice Dickman, Telephone number: 202−354−3267, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which |

| | | |
|---|---|---|
| | | includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/17/2025. Redacted Transcript Deadline set for 3/27/2025. Release of Transcript Restriction set for 5/25/2025.(Dickman, Janice) (Entered: 02/24/2025) |
| 02/24/2025 | 22 | SUPPLEMENTAL MEMORANDUM to re 5 MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Declaration Bishop Seitz, # 2 Declaration Brown, # 3 Declaration Colbert, # 4 Declaration Fuller, # 5 Declaration Main, # 6 Declaration Canny (Second))(Casazza, David) (Entered: 02/24/2025) |
| 02/24/2025 | 24 | MOTION for Leave to File Amicus Brief by JONATHAN CROSMER, KATHLEEN CROSMER. (Attachments: # 1 Amicus Brief, # 2 Text of Proposed Order)(mg) (Entered: 02/26/2025) |
| 02/25/2025 | 23 | NOTICE of Appearance by Dhananjay S. Manthripragada on behalf of UNITED STATES CONFERENCE OF CATHOLIC BISHOPS (Manthripragada, Dhananjay) (Entered: 02/25/2025) |
| 02/26/2025 | | MINUTE ORDER: The 24 Motion for Leave to File Amicus Curiae Brief by JONATHAN CROSMER, KATHLEEN CROSMER is GRANTED. The Clerk of Court is directed to docket the [24−1] amicus curiae brief. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/26/2025. (lctnm3). (Entered: 02/26/2025) |
| 02/26/2025 | 25 | Memorandum in opposition to re 5 Motion for TRO,, filed by UNITED STATES DEPARTMENT OF STATE, MARCO RUBIO, JENNIFER DAVIS, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ROBERT F. KENNEDY, JR, BUREAU OF POPULATION, REFUGEES, AND MIGRATION. (Attachments: # 1 Exhibit A)(Carilli, Joseph) (Entered: 02/26/2025) |
| 02/26/2025 | 26 | Unopposed MOTION for Leave to File *Brief Amicus Curiae* by America's Future, et al.. (Attachments: # 1 Exhibit Proposed Amicus Brief, # 2 Text of Proposed Order, # 3 Exhibit Corporate Disclosure Statement)(Olson, William) (Entered: 02/26/2025) |
| 02/26/2025 | 31 | AMICUS BRIEF by JONATHAN CROSMER, KATHLEEN CROSMER. (mg) (Entered: 03/03/2025) |
| 02/27/2025 | | MINUTE ORDER: The 26 Motion for Leave to File Amicus Curiae Brief by America's Future, et al., is GRANTED. The Clerk of Court is directed to docket the [26−1] amicus curiae brief. SO ORDERED. Signed by Judge Trevor N. McFadden on 2/27/2025. (lctnm3). (Entered: 02/27/2025) |
| 02/27/2025 | | Minute Entry for proceedings held before Magistrate Judge G. Michael Harvey: Settlement Conference held on 2/27/2025. (lcag) (Entered: 02/27/2025) |
| 02/27/2025 | 27 | NOTICE *of Change of Material Facts* by UNITED STATES DEPARTMENT OF STATE, MARCO RUBIO, JENNIFER DAVIS, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ROBERT F. KENNEDY, JR, BUREAU OF POPULATION, REFUGEES, AND MIGRATION (Carilli, Joseph) (Entered: 02/27/2025) |
| 02/27/2025 | 28 | REPLY to opposition to motion re 5 Motion for TRO,, filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Casazza, David) (Entered: 02/27/2025) |

| 02/27/2025 | 32 | AMICUS BRIEF by AMERICA'S FUTURE, ET AL. (mg) (Entered: 03/03/2025) |
|---|---|---|
| 02/28/2025 | | Minute Entry for proceedings held before Judge Trevor N. McFadden: Preliminary Injunction Hearing held on 2/28/2025 re 5 Motion for Temporary Restraining Order *and Preliminary Injunction* filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. Plaintiff's Amended Complaint and Amended Preliminary Injunction due by noon on 3/3/2025, Defendants' Opposition due by noon on 3/5/2025, Plaintiff's Reply due by noon on 3/6/2025. Preliminary Injunction taken under advisement. (Court Reporter Lisa Edwards.) (zljn) (Entered: 02/28/2025) |
| 03/03/2025 | 29 | AMENDED COMPLAINT against BUREAU OF POPULATION, REFUGEES, AND MIGRATION, ROBERT F. KENNEDY, JR, MARCO RUBIO, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES DEPARTMENT OF STATE, ADAM ZERBINOPOULOS, MELLISSA HARPER filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Summons Zerbinopoulos, # 2 Summons Harper, # 3 Summons USAO, # 4 Summons Attorney General, # 5 Exhibit A, # 6 Exhibit B, # 7 Exhibit C, # 8 Exhibit D, # 9 Exhibit E)(Casazza, David) (Entered: 03/03/2025) |
| 03/03/2025 | 30 | Amended MOTION for Preliminary Injunction by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum in Support)(Casazza, David) (Entered: 03/03/2025) |
| 03/03/2025 | 33 | SUMMONS (4) Issued Electronically as to MELLISSA HARPER, ADAM ZERBINOPOULOS, U.S. Attorney and U.S. Attorney General (mg) (Entered: 03/03/2025) |
| 03/03/2025 | | MINUTE ORDER: In light of Plaintiff's 30 Amended Motion for Preliminary Injunction, the Court DENIES AS MOOT Plaintiff's previous 5 Motion for Preliminary Injunction. SO ORDERED. Signed by Judge Trevor N. McFadden on 3/3/2025. (lctnm1) (Entered: 03/03/2025) |
| 03/04/2025 | 34 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Trevor N. McFadden held on February 28, 2025; Page Numbers: 1−65. Date of Issuance: March 4, 2025. Court Reporter/Transcriber Lisa Edwards. Telephone number (202) 354−3269. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/25/2025. Redacted Transcript Deadline set for 4/4/2025. Release of Transcript Restriction set for 6/2/2025.(Edwards, Lisa) (Entered: 03/04/2025) |
| 03/05/2025 | 35 | |

| | | |
|---|---|---|
| | | SUPPLEMENTAL MEMORANDUM to re <u>30</u> Amended MOTION for Preliminary Injunction filed by ADAM ZERBINOPOULOS, MELLISSA HARPER, UNITED STATES DEPARTMENT OF STATE, MARCO RUBIO, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, ROBERT F. KENNEDY, JR, BUREAU OF POPULATION, REFUGEES, AND MIGRATION. (Attachments: # <u>1</u> Exhibit A)(Carilli, Joseph) (Entered: 03/05/2025) |
| 03/06/2025 | <u>36</u> | REPLY to opposition to motion re <u>30</u> Motion for Preliminary Injunction filed by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. (Casazza, David) (Entered: 03/06/2025) |
| 03/11/2025 | <u>37</u> | MEMORANDUM ORDER DENYING <u>30</u> Amended Motion for Preliminary Injunction. See attached Order for details. Signed by Judge Trevor N. McFadden on 3/11/2025. (lctnm3). (Entered: 03/11/2025) |
| 03/12/2025 | <u>38</u> | NOTICE OF INTERLOCUTORY APPEAL as to <u>37</u> Memorandum & Opinion, Terminate Motions by UNITED STATES CONFERENCE OF CATHOLIC BISHOPS. Filing fee $ 605, receipt number ADCDC−11537565. Fee Status: Fee Paid. Parties have been notified. (Casazza, David) (Entered: 03/12/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, <br><br> *Plaintiff,* <br><br> *v.* <br><br> UNITED STATES DEPARTMENT OF STATE, et al., <br><br> *Defendants.* | Case No. 1:25-cv-465-TNM |

### NOTICE OF APPEAL

Notice is given this March 12, 2025, that the United States Conference of Catholic Bishops ("USCCB") appeals to the United States Court of Appeals for the District of Columbia Circuit from this Court's Order, ECF No. 37, denying USCCB's Motion for Preliminary Injunction.

March 12, 2025

Respectfully submitted,

*/s/ David W. Casazza*

William Quinn (D.C. Bar No. 1601853)
Shannon Eckman (D.C. Bar No. 90024504)**
UNITED STATES CONFERENCE OF CATHOLIC BISHOPS
3211 Fourth Street, N.E.
Washington, DC 20017
(202) 541-3300
WQuinn@usccb.org


*pro hac vice
**pro hac vice* forthcoming

Dhananjay Manthripragada*
  (D.C. Bar No. 990448)
Nick Harper (D.C. Bar No. 144707)
David W. Casazza (D.C. Bar No. 1046918)
Connor P. Mui* (D.C. Bar No. 90009004)
Aly Cox (D.C. Bar No. 1780473)
Laura Stanley* (D.C. Bar No. 90008623)
Hunter Mason* (D.C. Bar No. 90021049)
Audrey Payne* (D.C. Bar No. 90028352)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
DManthripragada@gibsondunn.com
NHarper@gibsondunn.com
DCasazza@gibsondunn.com
CMui@gibsondunn.com

1

ACox@gibsondunn.com
LStanley@gibsondunn.com
HMason@gibsondunn.com
APayne@gibsondunn.com

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**UNITED STATES CONFERENCE OF**
**CATHOLIC BISHOPS**,

            Plaintiff,

         v.

**U.S. DEPARTMENT OF STATE**, *et al.*

          Defendants.

---

Case No. 1:25-cv-00465 (TNM)

**MEMORANDUM ORDER**

The U.S. Conference of Catholic Bishops seeks an emergency preliminary injunction preventing the Government from pausing or canceling contracts between them. These contracts require the Government to fund the Conference's provision of resettlement services to refugees.

But this Court cannot offer the requested relief. The Conference's motion is, at its core, seeking a purely contractual remedy. And the Tucker Act instructs that all contract disputes with the Government must be resolved by the Court of Federal Claims. More, the Conference's desired remedy is inconsistent with equitable remedies like injunctions. The Court thus denies the Conference's motion.

**I.**

For over 60 years, the Government has aided refugees. This mission started in the thick of the Cold War, when Congress appropriated funds to address "urgent refugee and migration needs" in response to individuals fleeing communist countries. Migration and Refugee Assistance Act of 1962, 22 U.S.C. § 2601(c). Later, Congress would enact the Refugee Act of 1980, which created a formal framework for the admission and resettlement of refugees. Pub. L. No. 96-212, 94 Stat. 102 (codified at 8 U.S.C. § 1522). This initiative, called the U.S. Refugee

Admissions Program, created "a permanent and systematic procedure for the admission to this country of refugees of special humanitarian concern to the United States, and to provide comprehensive and uniform provisions for the effective resettlement and absorption of those refugees who are admitted." Pub. L. No. 96-212, § 101(b), 94 Stat. 102.

So refugees who have been persecuted or fear persecution abroad can seek legal admission into the United States through this program. *See* 8 U.S.C. §§ 1101(a)(42), 1157(c). But there is no rubber stamp for admissions. At the meta-level, the President sets a cap on the maximum number of refugees who can be admitted annually. 8 U.S.C. §§ 1157 (a)(2), 1157(c)(1), 1181(c). And on the ground, an extensive vetting process takes place. Applicants are rigorously screened in their home countries for eligibility. Before they can be admitted to the United States, they must undergo detailed interviews, medical examinations, and biometric assessments, among other checks. Am. Compl, ECF No. 29, ¶ 30.

If admitted, refugees assimilating to their new homes are then offered aid under various provisions of the Refugee Assistance Program. Though this enterprise is multifaceted, at issue here is the "[p]rogram of initial resettlement." 8 U.S.C. § 1522(b).

This program envisions a public-private partnership between the Department of State and nonprofit organizations.[1] 8 U.S.C. §1522(b)(1)(A). State's Bureau of Population, Refugees, and Migration ("PRM") is "authorized" to enter into annual cooperative agreements with private resettlement agencies whose mission it is to aid refugees in their critical first weeks in the United States. 8 U.S.C. §1522(b)(1)(A)(ii); Am. Compl. ¶ 33; *see also* Decl. A. Zerbinopoulos, ECF

---

[1] Although the statute authorizes the Director of the Office of Refugee Resettlement at the Department of Health and Human Services to carry out the initial resettlement program, the Director's statutory obligations for initial resettlement have been transferred by presidential designation to the Secretary of State under Section 1522(b)(1)(B) and delegated to Bureau of Population, Refugees, and Migration. Mot. TRO, ECF No. 5-2, at 6 n.1; see also *HIAS, Inc. v. Trump*, 985 F.3d 309, 316 n.2, 319 n.5 (4th Cir. 2021).

No. 25-1, at ¶ 11 (explaining that initial resettlement funding is provided to a refugee for 30 to 90 days).  Under the cooperative agreements, PRM awards specific sums to each resettlement agency to reimburse the agency for expenses it incurs supporting the refugees during those initial weeks.  Am. Compl. ¶ 33; Decl. A. Zerbinopoulos ¶ 9.  This funding covers essential services such as transportation from the airport, housing, food, and clothing.  Am. Compl. ¶ 33; § 1522(a)(1), (b)(1)(A), (b)(7); Decl. A. Zerbinopoulos ¶ 10.  It also helps get refugees access to social, medical, educational, and employment services.  Am. Compl. ¶ 33; § 1522(a)(1), (b)(1)(A), (b)(7); Decl. A. Zerbinopoulos ¶ 10.  The support given in the first three months is essential, as "[l]ost opportunities for English and job training in the earliest days of resettlement often can't be made up for later."  Decl. W. Canny, ECF No. 5-3, ¶ 22.

The Conference is one of ten resettlement agencies receiving funding under the program.  Am. Compl. ¶ 33.  For the Conference, helping refugees is no minor avocation.  Its participation in the Refugee Admissions Program reflects the Catholic Church's longstanding commitment to migrants and refugees.  Am. Compl. ¶ 25 (citing Pope Pius XII, Apostolic Constitution, *Exsul Familia Nazarethana* (1952)).  This commitment honors the Holy Family's refugee status during their flight to Egypt.  *See* Amend. Compl. ¶ 25; *Matthew* 2:13–16.  In line with this mission, the Conference has partnered with the federal government for over 40 years to provide initial resettlement services to refugees.  Am. Compl. ¶ 40.  And today, the Conference runs the largest non-governmental resettlement program in the country, serving roughly 17% of resettling refugees.  Am. Compl. ¶ 41.

For Fiscal Year 2025, the Conference entered into two cooperative agreements with PRM awarding the Conference about $65 million for initial resettlement.  Am. Compl. ¶ 43; Cooperative Agreement 1, ECF No. 5-4; Cooperative Agreement 2, ECF No. 5-5.  One of these

agreements covers refugees and awards around $43 million in funding, while the other covers special immigrant visa holders from Afghanistan (i.e., those who assisted the U.S. mission in Afghanistan and fear retaliation) and awards around $22 million in funding. Am. Compl. ¶¶ 32, 43; Cooperative Agreement 1 at 2, 4; Cooperative Agreement 2 at 2, 4. In all other relevant respects, the cooperation agreements are identical. Both contracts run from October 1, 2024, to September 30, 2025. Am. Compl. ¶ 43; Cooperative Agreement 1 at 2; Cooperative Agreement 2 at 2.

At least, they were meant to. But their continuing viability was cast into doubt beginning on January 20, 2025. That afternoon, President Trump signed an executive order titled "Reevaluating and Realigning United States Foreign Aid." Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan 20, 2025). The Foreign Aid Order directed relevant executive branch officials to institute a "90-day pause in United States foreign development assistance" pending review of the programs' alignment with Administration priorities. *Id.* § 3(a). The same day, the President suspended the entry of most new refugees into the United States. *See* Exec. Order No. 14,163, 90 Fed. Reg. 8459 (Jan. 20, 2025).

Shortly afterward, Secretary of State Marco Rubio issued his own directive: "[c]onsistent with" the Foreign Aid Order, "all new obligations of funding . . . for foreign assistance programs funded by or through the Department and USAID" would be paused "pending a review." Mem. from Sec'y of State to All Diplomatic and Consular Posts, 25 State 6828 (Jan. 24, 2025), https://perma.cc/J26T-VCJR ("Rubio Memo"). Later that day, PRM purported to comply. It sent a suspension letter to the Conference that "immediately suspended" funds under the Conference's cooperative agreements "pending a Department-wide review of foreign assistance programs." PRM Suspension Letter, ECF No. 29-5. The suspension letter ordered the

Conference to "stop all work under the award(s) and not incur any new costs" after January 24. *Id.* The suspension letter reasoned that the pause in funding was "[c]onsistent with the President's Executive Order" and noted that the award to the Conference "may no longer effectuate agency priorities." *Id.*

But the Conference had millions of dollars in requested reimbursements pending with State. Mot. TRO, ECF No. 5-2, at 12. And more, without ongoing funding, the thousands of refugees already in its care would soon lack support. *Id.* The Conference filed suit and promptly sought a temporary restraining order ("TRO") and preliminary injunction.[2] Compl., ECF No. 1; Mot. TRO. Days later, this Court held an oral hearing on those motions. Minute Entry, 2/20/2025. It denied the request for the TRO, finding that the Conference had failed to meet its burden of irreparable harm "for such an exigent, [] extraordinary remedy." Tr. Mots. Hearing, ECF No. 21, at 48:16–17. But the Court stressed that it was not making any "conclusive ruling" as to the request for preliminary injunction. *Id.* at 48:18. The Court thus issued an expedited briefing schedule and set a follow-up hearing for the preliminary injunction a week later. *Id.* at 52–53.

Just days before that hearing, the State Department doubled down. On February 26, State issued two formal notices of termination to the Conference, canceling the cooperative agreements between the Conference and PRM. Am. Compl. ¶ 56; Termination Letters, ECF No. 27. The justification behind the termination was simple: the agreements "no longer effectuate[d] agency priorities." Termination Letters at 4–5. PRM thus terminated the awards "in accordance

---

[2] Defendants include the Department of State, Secretary Rubio, PRM, and the Assistant Secretary of PRM. Compl. at 1. The Conference also named the Department of Health and Human Services and Secretary Robert F. Kennedy (collectively, the "Government") as defendants "out of an abundance of caution," because 8 U.S.C. § 1522(a) obligates the Director of the Office of Refugee Resettlement at the Department of Health and Human Service to carry out certain refugee programs. Compl. at 12 n.2; Mot. TRO at 6 n.1.

with the U.S. Department of State Standard Terms and Conditions, 2 C.F.R. 200.340, and/or Award Provisions as applicable." *Id.* This was based on federal regulations, incorporated into the cooperative agreements, that permit termination "to the greatest extent authorized by law" if an award "no longer effectuates the program goals or agency priorities." *See* Cooperative Agreement 1 at 81; Cooperative Agreement 2 at 84; 2 C.F.R. § 200.340(a)(4). The Conference was therefore ordered to "stop all work on the program" and refrain from "incur[ring] any new costs," effective immediately. Termination Letters at 4–5.

The Court asked for updated briefing to explain the legal salience of a termination as opposed to a suspension. *See* Minute Entry 2/28/2025. That briefing has since been submitted. In its amended motion for a preliminary injunction, the Conference urges that it is still likely to succeed on the merits of its claims. It argues that the termination is contrary to various federal laws, including the Refugee Act of 1980 and the Impoundment Control Act. Am. Mot. Prelim. Inj., ECF No. 30-2, at 4–8. It also insists that the sudden termination was arbitrary and capricious, in violation of the Administrative Procedure Act. *Id.* at 8–9. More, the Conference stresses that it meets all the other necessary requirements to earn preliminary relief—that it will suffer irreparable injury without Court intervention, and that the public interest favors relief. *Id.* at 9–10. So the Conference asks that the Court "enjoin[]" Defendants "from implementing, enforcing, or otherwise giving effect to any rule, order, policy, or other agency action suspending, freezing, pausing, or otherwise preventing the obligation or disbursement of appropriated funds to provide refugee resettlement services." Prop. Order, ECF No. 30-1, at 1.

The Government urges mainly that this Court lacks jurisdiction over this action. It insists that the Tucker Act directs all contract disputes with the federal government to the Court of Federal Claims. Suppl. Opp'n, ECF No. 35, at 1. According to the Government, the "sole basis"

for the Conference's motion "is grounded in the Cooperative Agreements," and thus district courts are divested of authority to decide it. *Id.* But even if this Court *did* have jurisdiction, says the Government, the Conference's challenge would still be fruitless, as the termination decision was neither contrary to law nor was it arbitrary and capricious. *Id.* at 4–10. Finally, the Government insists that Conference is neither suffering irreparable harm nor enjoys the favor of equities and the public interest. *Id.* at 11.

## II.

A preliminary injunction is "an extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (cleaned up). The movant faces a high bar for success, as it must demonstrate four elements "by a clear showing": (1) that it is likely to succeed on the merits; (2) that it likely suffer irreparable harm in the absence of injunctive relief; (3) that the balance of equities weighs in favor of granting the relief; and (4) that the public interest favors the injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where, as here, the Government is the party opposing injunctive relief, the latter two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Finally, the burden is on the movant to demonstrate that the Court has the authority to issue the emergency relief it seeks. *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 723 F. Supp. 2d 1, 11 (D.D.C. 2010), *aff'd*, 639 F.3d 1078 (D.C. Cir. 2011). Like the concept of Article III standing, the party invoking a federal court's jurisdiction has the burden of proving it. *Cf. Env'tl Working Grp. v. U.S. Food and Drug Admin.*, 301 F. Supp. 3d 165, 170 (D.D.C. 2018). Federal courts start from the presumption that they lack such jurisdiction.

**III.**

The Conference is unlikely to prevail on the merits because this Court lacks the authority to grant the relief it seeks.  The requested injunctive relief is incompatible with the Government's sovereign immunity.

Start with the basics.  A plaintiff requesting emergency relief against the Government "must identify an unequivocal waiver of sovereign immunity."  *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014).  The Conference points to § 702 of the Administrative Procedure Act ("APA") as providing that waiver.  Am. Mot. Prelim. Inj. at 1–2.  But § 702's waiver comes with a catch—it "does not apply if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618 (D.C. Cir. 2017) (cleaned up) (quoting 5 U.S.C. § 702).[3]

The Government argues that the Tucker Act "impliedly forbids" the APA's sovereign immunity waiver.  Suppl. Opp'n at 1–4.  The Tucker Act grants the Court of Federal Claims exclusive jurisdiction over certain suits against the Government, including those "founded . . . upon" any "contract with the United States."[4]  28 U.S.C. § 1491(a)(1); *see also Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992) ("[T]his Court and others have interpreted the Tucker Act as providing the *exclusive* remedy for contract claims against the government.").  Thus, if the present motion is grounded in contract, the APA does not

---

[3] The APA also excludes from its waiver of sovereign immunity claims for money damages, 5 U.S.C. § 702, and claims for which an adequate remedy is available elsewhere, 5 U.S.C. § 704.  Because the Court concludes that the Tucker Act impliedly precludes the APA's waiver of sovereign immunity, it need not decide whether these other exclusions apply.

[4] The amount in controversy must also be at least $10,000 for Tucker Act jurisdiction.  *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022).  That requirement is easily met, as the Conference alleges it has "millions of dollars in pending, unpaid reimbursements."  Am. Compl. ¶ 7.

waive the Government's immunity from suit, and the district court cannot afford the requested relief.

But determining whether a dispute is "at its essence" contractual is not always simple. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982); *see also Transohio*, 967 F.2d at 609 ("The issue is more complicated than the agencies let on."). On the one hand, a mere cameo by a contract in a suit that is otherwise based on federal law is not enough to kick the case to Claims Court. *See Megapulse*, 672 F.2d at 968 ("[T]he mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action . . . into one [based] on the contract and deprive the court of jurisdiction it might otherwise have."). Even if a dispute implicates a contract, it may be heard in district court if it still "stem[s] from a statute or the Constitution." *Transohio*, 967 F.2d at 609. On the other hand, courts are to be wary of plaintiffs artfully pleading their way around the jurisdictional strictures of the Tucker Act. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022) ("[W]e have cautioned plaintiffs that this court prohibits the creative drafting of complaints . . . to avoid the jurisdictional consequences of the Tucker Act.") (cleaned up).

Resolving the ultimate inquiry of whether a claim is "essentially a contract action" turns on two key considerations: "The source of the rights upon which the plaintiff bases its claims" and "the type of relief sought." *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004) (quoting *Megapulse*, 672 F.2d at 968).

The latter factor is dispositive here. The nature of relief the Conference seeks "sounds in contract." *Id.* at 68. It asks the Court to "enjoin[]" the Government

> "from implementing, enforcing, or otherwise giving effect to any rule . . .
> preventing the obligation or disbursement of appropriated funds to

9

provide refugee resettlement services, including by . . . implementing, enforcing, or otherwise giving effect to the February 26, 2025, termination letter issued by the State Department to USCCB; or issuing or reissuing any other letters or taking any other actions that have a materially similar effect."

Prop. Order at 1.

Stripped of its equitable flair, the requested relief seeks one thing: The Conference wants the Court to order the Government to stop withholding the money due under the Cooperative Agreements. In even plainer English: The Conference wants the Government to keep paying up. Thus the Conference "seeks the classic contractual remedy of specific performance." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). But this Court cannot order the Government to pay money due on a contract. *Id.* Such a request for an order that the government "must perform" on its contract is one that "must be resolved by the Claims Court." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 80 (D.C. Cir. 1985); *see also Bowen v. Massachusetts*, 487 U.S. 879, 921 (1988) (Scalia, J., dissenting) ("It is settled that sovereign immunity bars a suit against the United States for specific performance of a contract.").

Indeed, the Supreme Court has stressed that "an injunction to compel the payment of money past due under a contract . . . was not typically available in equity"—meaning an injunction is the wrong vehicle to recoup withheld funds. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210–11 (2002). The more appropriate remedy "for an agency's recalcitrant failure to pay out may be to 'seek specific sums already calculated' and 'past due' in the Court of Federal Claims." *Dept. of State v. AIDS Vaccine Advoc. Coal.*, 604 U.S. ---, 2025 WL 698083, at *3 (2025) (mem.) (Alito J., dissenting) (quoting *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 327 (2020)). The awkward fit between the relief requested and the medium employed here only underscores the inescapable truth: The Conference seeks an award

10

of money due, which a court sitting in equity may not grant. *See Knudson*, 534 U.S. at 210 n.1 ("[A]ny claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction.").

The Court is guided by the D.C. Circuit's opinions in *Spectrum* and *Ingersoll-Rand*. In *Spectrum*, the plaintiff was a party to a contract with the General Services Administration ("GSA"). *Spectrum Leasing Corp.*, 764 F.2d at 892. There, as here, the plaintiff sued in the district court after the GSA stopped paying the plaintiff's invoices, allegedly in violation of the Debt Collection Act. *Id.* The plaintiff sought "an injunction compelling the GSA to cease withholding . . . payments due under the contract." *Id.* The district court dismissed the case for want of subject matter jurisdiction, and the Circuit affirmed. *Id.* at 895. In affirming, the court stressed that plaintiff, at bottom, was pursuing a "typical contract remedy," as it was merely trying to get what it was promised under the agreement. *Id.* at 895. Thus the case fell within the Claims Court's exclusive jurisdiction. *Id.*

Similarly, in *Ingersoll-Rand*, the plaintiff alleged that the Air Force's decision to terminate its contract for convenience reasons was arbitrary and capricious. 780 F.2d at 75. The court found jurisdiction could not lie in the district court because the suit was inherently contractual. *Id.* at 80. As here, the plaintiff in *Ingersoll-Rand* sought a declaration that the contract termination was unlawful and an injunction requiring the Air Force to undo its termination of the contract. *Id.* at 79–80. The court acknowledged that the complaint nominally sought "only a declaratory and injunctive order." *Id.* at 79. Still, such semantics were

11

insufficient to establish district court jurisdiction because "the essence" of the claim was "a request for specific performance of the original contract." [5]  *Id.* at 79–80.

The Court squints in vain to see any daylight.  Like those plaintiffs, the Conference asks the Court to order the Government to cancel the termination, pay money due, and reinstate the contracts.  That is something this Court lacks the power to do.

*Crowley* does not counsel otherwise.  There, a plaintiff with a military contract challenged the GSA's authority to audit and unilaterally reduce future payments under the contract.  *Crowley*, 38 F.4th at 1103 & n.4.  Though GSA's independent audits and payment offsets affected the plaintiff's ability to get paid under the contract, the relief sought was not contractual.  *See id.* at 1111–12, 1113.  Critically, the plaintiff had no contractual relationship with GSA itself, so any remedy afforded against GSA could neither be construed as damages nor specific performance.  *Id.* at 1110.  So rather than seeking monetary relief under a contract, the plaintiff sought "*prospective* relief from the GSA's audits."  *Id.* at 1112.  Thus *Crowley* stands in contradistinction to the present case, where the Conference asks the Court to order the Government to honor its contractual obligations.  *Cf. id.* at 1108 ("As all agree, the GSA owes no

---

[5] To be sure, *Knudson* and Justice Alito's dissent in *AIDS Vaccine Advocacy Coalition* suggest that payment for money past due under a government contract cannot be classified as an equitable remedy for specific performance, potentially calling some of the reasoning in *Spectrum* into doubt.  *See Knudson*, 534 U.S. at 210–12; *AIDS Vaccine Advocacy Coal.*, 2025 WL 698083, at *2-3 (Alito J., dissenting).  But these cases do not undermine the Court's bottom line.  To start, the Conference does not merely seek repayment of contractual sums past due.  It also seeks a preliminary injunction reinstating an ongoing financial relationship between itself and the Government, as thousands of refugees remain in the initial resettlement period in the Conference's care.  In other words, the Conference not only wants to be reimbursed for costs sustained, as in *Spectrum*, but wants an order compelling the Government to reimburse the Conference for costs sustained in the future, as in *Ingersoll-Rand*.  *Knudson* and Justice Alito's dissent in *AIDS Vaccine Advocacy Coalition* only speak to costs previously due.  Thus *Ingersoll-Rand* remains on all-fours with this case.  More, *Knudson* and Justice Alito's dissent also suggest that a district court would lack jurisdiction to issue an order compelling payment of sums past due, but they paint this rule as grounded in the APA's exclusion from its waiver of sovereign immunity suits seeking monetary damages.  So even if these opinions endorse a change to the framework for money previously due, this Court still cannot offer the relief requested.

duty to Crowley under the Contract . . . .  And Crowley did not seek in district court an order

compelling the GSA to perform or fulfill any obligations to Crowley created by the contract.").

Indeed, another court in this district recently rejected a similar request from plaintiffs

seeking to revive terminated government contracts.  *See AIDS Vaccine Advoc. Coal., et al. v.*

*Dept. of State, et al.*, No. 25-cv-00400, 2025 WL 752378, at *23 (D.D.C. Mar. 10, 2025).  In

*AIDS Vaccine Advocacy Coalition*, a group of plaintiffs challenged the Executive's withholding

of appropriated foreign aid funding and subsequent termination of their contracts.  *See id.* at *6–

7, *23.  Just like the Conference, those plaintiffs asked for a preliminary injunction that would, in

effect, order the Government "to continue to contract with them."  *Id.* at *23.  But the court

recognized that while the Executive has an obligation to spend appropriated funds, "laws have

traditionally afforded the Executive discretion on *how* to spend" that money.  *Id.* (emphasis

added).  As a result, the court could not order the Government to revive specific contracts.  *Id.*

So too here.  The relief the Conference seeks in its preliminary injunction—reinstatement of

contracts terminated by the Government—is beyond the power of this Court.

The Conference resists this conclusion.  But in its artful efforts to dodge the inevitable,

the Conference falls prey to precisely the sort of "creative drafting" that *Crowley* warns against.

38 F.4th at 1107.  It insists that it merely seeks the "classic equitable remedies available in an

administrative law action"—an order "holding unlawful and setting aside agency action."  Am.

Mot. Prelim. Inj. at 3 (cleaned up).  In other words, the Conference frames its motion as pursuing

typical equitable relief under the APA.  But accepting such an argument would be to distort the

obvious.  Sure, the Conference seeks to set aside agency action.  But the agency action that it

asks the Court to reverse is the Government's decision to cease a financial relationship with the

Conference.  This is not standard injunctive fare.  *Cf. Knudson*, 534 U.S. at 211 ("[A]n injunction

to compel the payment of money past due under a contract . . . was not typically available in equity."); *see also Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.) ("We know of no case in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill its contractual obligations.").  Instead, it is a request that the Court order the Government "to pay money owed . . . under an executory contract."  *Spectrum*, 764 F.2d at 894; *see also* Am. Mot. Prelim. Inj. at 4 (describing "the relief most important to [the Conference]" as "specific performance" in addition to "prospective relief.").  This request is "founded upon a contract for purposes of the Tucker Act."  *Spectrum*, 764 F.2d at 895.  It thus must be heard in Claims Court.[6]

*   *   *

In short, the Conference alleges that, over the last several weeks, the Government paused and then reneged on its contracts.  At issue here is not whether the Government had the right to do so, much less whether the Government was right to do so.  No, the question is far narrower: Whether this Court has the authority to afford the "drastic" emergency relief that the Conference seeks.  *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1343 (D.C. Cir. 1980).  It does not.

In reaching this conclusion, the Court makes no finding on its jurisdiction over the underlying Complaint.  There is no motion to dismiss presently before the Court that would call

---

[6] The D.C. Circuit has suggested that the Claims Court can offer this type of relief.  *See Spectrum*, 764 F.2d at 895 n.7 ("The Claims Court . . . ordinarily lacks the authority to grant specific performance of contracts as well as other forms of equitable relief.  We note, however, that in limited circumstances the Claims Court when exercising Tucker Act jurisdiction may be empowered to grant such equitable relief where the relief sought is in the form of money."); *but see Bowen*, 487 U.S. at 920–21 (Scalia, J., dissenting) (noting that the Claims Court lacks authority to grant specific performance).  Regardless of the precise remedial powers of the Claims Court, the Circuit signaled that government contractors seeking specific performance must go there, even if the contractor will be limited to a damages remedy.  *Ingersoll-Rand Co.*, 780 F.2d at 80 (noting that the plaintiff "would prefer to avoid becoming subject to the jurisdiction of the Claims Court because there its remedies could not include specific performance," but stressing that the plaintiff could not "avoid[] this remedy restriction" and must have its complaint "resolved by the Claims Court.").  After all, Congress designed the APA so that it would "not change existing limitations on specific relief . . . derived from statutes dealing with such matters as government contracts."  H.R. Rep. 94-1656, at 13 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 6121, 6133.

14

for an assessment of jurisdiction *writ large*.  Instead, the Court holds simply that it "cannot find that [the Conference] [is] likely to succeed on the merits" of its motion because the court "has no authority to remedy [the alleged violations] in the way plaintiff[] ask[s]."  *Greater New Orleans Fair Hous. Action Ctr.*, 723 F. Supp. 2d at 10.  This conclusion may not flow to the Complaint itself.  The nature of relief sought in the Complaint is notably different than that sought in the present motion, and those distinctions may well matter for jurisdictional purposes.  *Compare* Amend. Compl. 40–41 *with* Prop. Order at 1; *see also Sharp*, 798 F.2d at 1523 (dividing up claims and prayer for relief to determine jurisdiction over each).  At any rate, whether the Complaint requests relief that sounds not in contract but in the proper jurisdiction of a district court, this decision leaves for another day.

This Court wields "only that power authorized by Constitution and statute . . . which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "[T]o allow suit against the United States under the APA in actions actually based on contract would create such inroads into the restrictions of the Tucker Act that it would ultimately result in the demise of the Court of Claims"—and, accordingly, an abrogation of congressional prerogative and will.  *Megapulse*, 672 F.2d at 967.  This Court is but a creature of the trifurcated structure of its Constitution.  It is perhaps when emotions are at their zenith that the imperative to police jurisdictional bounds carries the most importance.

**IV.**

In sum, the Conference cannot succeed on the merits of its claims because the Court lacks jurisdiction over the relief the Conference seeks in its preliminary injunction.  Its motion for a preliminary injunction is thus **DENIED.**

**SO ORDERED.**

2025.03.11
15:43:15 -04'00'

Dated: March 11, 2025                    TREVOR N. McFADDEN, U.S.D.J.

16