IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS;<br><br>*Plaintiff,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, et al.,<br><br>*Defendants.* | Case No. 1:25-cv-465-TNM |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR RELIEF FROM LOCAL RULE 7(N)**

There is no sound justification for delaying the government's production of the administrative record. In its eleventh-hour motion, the government argues only that the administrative record is unnecessary to resolve the government's motion to dismiss. But the government's motion to dismiss repeatedly relies on documents that would seem to be within the administrative record, including executive orders, the cooperative agreements, and agency declarations. If those documents comprise the complete administrative record, it will require little additional effort for the government to comply with Local Rule 7(n). If, on the other hand, there are other documents in the administrative record, the government should not be permitted to withhold them from the Conference and this Court. Producing the administrative record now also will facilitate prompt resolution of this case. Because there are unlikely to be factual disputes at this stage, the Conference is contemplating moving for summary judgment in parallel with the Court's consideration of the government's motion to dismiss. That would ensure that the Court can resolve all remaining

1

issues in the case at once. Having the complete administrative record on file will aid the Conference's preparation, and this Court's resolution, of that motion. The Conference therefore respectfully requests that the Court deny the government's motion for relief from Local Rule 7(n) and direct the government to promptly produce the administrative record.

## I.      The Administrative Record Will Facilitate The Case's Progress To Final Judgment

Rule 7(n) aids the Court's efficiency by providing the parties with equal access to the relevant materials and centering the dispositive motions practice on materials relevant to "the issues raised in the motion or opposition." LCvR 7(n)(1); *see Pendergrass v. U.S. Dep't of Def.*, 2020 WL 5406043, at *2 (D.D.C. Sept. 9, 2020) (the rule exists "in order not to burden the Court with 'excess material . . . '"). By filing its motion in parallel with the deadline imposed by Rule 7(n) for the filing of the index, the government has effectively given itself relief. The government should be required to come into compliance with Rule 7(n) promptly.

Production of the administrative record in the normal course will facilitate the case's progress to final judgment. Recognizing the interests of all involved in expeditious resolution of this litigation—including the parties, the affected refugees, and the Court—the Conference is actively considering the most efficient avenues to advance the case to final judgment, including by seeking summary judgment in parallel with the Court's consideration of the motion to dismiss. Because there are likely no factual disputes and because the Court's consideration of the Conference's claims will rest predominantly on the material in the administrative record, the government's prompt production of the record will move the case toward resolution. *See Ne. Hosp. Corp. v. Sebelius*, 699 F. Supp. 2d 81, 85 (D.D.C. 2010) (focus of judicial review is "whether the agency action is supported by the administrative record" (citing *Richards v. Immigr. & Naturalization Serv.*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977))), *aff'd*, 657 F.3d 1 (D.C. Cir. 2011).

## II. Withholding The Administrative Record Puts The Conference At A Disadvantage And Will Delay Resolution Of The Case

Rule 7(n) not only facilitates the Court's ability to efficiently rule on dispositive motions; it also fosters transparency and evenhanded advocacy by requiring both parties to review the entire administrative record and "jointly" prepare an appendix for the Court. LCvR 7(n)(2). The government's refusal to produce the record creates an "asymmetry in information [that] undermines the reliability of a court's review upon those portions of the record cited by one party or the other." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 793 (D.C. Cir. 1984). That information asymmetry matters here.

First, the information asymmetry matters for the resolution of the arguments raised in the government's motion to dismiss. As the government itself argues, the Court's consideration of the government's motion to dismiss may require the Court to resolve "factual challenge[s]" and to consult "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the parties." Mot. 8, 9 (second quotation quoting *Busby v. Capital One N.A.*, 932 F. Supp. 2d 114, 133-34 (D.D.C. 2013)). And, as the government contends, this can include documents *not* yet placed before the Court, because a "document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." Mot. 9 (quoting *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 218 (D.D.C. 2012)). The government repeatedly relies on documents and factual assertions that may form part of the administrative record in making its arguments in favor of dismissal. *See* Mot. 6 (declaration of agency official), 7 (executive order), 13 (cooperative agreements), 15 (same), 16 (declaration of agency officials). The government uses these documents to argue the extent to which the cooperative agreements form a contract, factual conditions giving rise to mootness, and the bases for the government's purported suspension and

termination of its relationship with the Conference. Having raised these arguments based on part of the administrative record, the government should not be permitted to withhold the remainder of the record—which may include documents contradicting or refuting these arguments—from the Conference.

Second, the administrative record contains materials relevant to summary judgment. This matter turns on legal disputes about the validity of the government's action regarding initial resettlement assistance for refugees. The validity of those actions must be measured by "the whole record or those parts of it cited by a party," 5 U.S.C. § 706, which "encompasses everything 'before the [decision maker] at the time he made his decision.'" *AID Atlanta, Inc. v. U.S. Dep't of Health and Human Servs.*, 340 F. Supp. 3d 1, 4 n.1 (D.D.C. 2018) (alteration in original) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). The documents before the agency when it made its decision would inform the Court's consideration of whether the government's action is consistent with its statutory duty to provide resettlement assistance to refugees upon their entry to the United States, Compl. ¶ 77, or whether the government's action is arbitrary and capricious because, among other shortcomings, it "failed to consider the dire consequences of its actions and obvious, superior alternatives," Compl. ¶ 92. By unilaterally withholding the administrative record, the government has unduly handicapped the Conference's ability to seek expeditious summary judgment, forcing it to move based on the partial record available to it or to postpone the Conference's dispositive motion until the government eventually produces the administrative record. The requirement in this Court's local rules to file the record index contemporaneously with the government's motion to dismiss is designed to prevent precisely that delay.

Allowing the government to withhold the record from the Conference would confer an unjust litigation advantage. While the government has selected the most favorable portions of the

4

record to support their motion to dismiss, *see, e.g.*, Mot. 6 (referencing "inform[ation]" given to "senior officials in the State Department's Migration Bureau" relating to the Foreign Aid Executive Order's effect on the Refugee Admissions Program), they are now seeking to keep back any unfavorable portions, thereby shielding themselves from—or at the very least delaying—fulsome arguments on summary judgment. This is exactly the kind of "asymmetry" that mutual review of the record is designed to prevent. *Heckler*, 749 F.2d at 793; LCvR 7(n)(2). Because its arguments "rely, at least in part, upon the Administrative Record," "the Government must produce the Record in order to allow [the Conference] to rely upon it as well as to enable the Court to evaluate the strength of both Parties' arguments." *Vargus v. McHugh*, 87 F. Supp. 3d 298, 302 (D.D.C. 2015).

### III. Producing The Administrative Record Would Not Overly Burden The Government

In opposing the government's motion for relief from its ordinary obligations, the Conference is asking very little of the government. Judging by the government's own representations, the administrative record in this case is likely to be small and the burden of assembling the contents of the record would be correspondingly slight. That small burden hardly outweighs the interests in efficiency and certainty that are fostered by providing both parties access to the relevant record and allowing the parties to place the relevant issues before the Court promptly and efficiently. Because production of the record would reduce the burden of prolonged litigation on the parties, the Court, and on the refugees potentially affected by this case's outcome, the Conference respectfully submits that enforcing the local rules in this instance is eminently reasonable.

*     *     *     *     *

This Court should deny the government's motion for relief from Local Rule 7(n).

April 24, 2025

Respectfully submitted,

*/s/ David W. Casazza*

William Quinn (D.C. Bar No. 1601853)*
Shannon Eckman (D.C. Bar No. 90024504)*

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS
3211 Fourth Street, NE
Washington, DC 20017
(202) 541-3300
WQuinn@usccb.org

Dhananjay Manthripragada
  (D.C. Bar No. 990448)*
Nick Harper (D.C. Bar No. 144707)
David W. Casazza (D.C. Bar No. 1046918)
Connor P. Mui (D.C. Bar No. 90009004)*
Aly Cox (D.C. Bar No. 1780473)
Laura Stanley (D.C. Bar No. 90008623)*
Hunter Mason (D.C. Bar No. 90021049)*
Audrey Payne (D.C. Bar No. 90028352)*

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
(202) 955-8500
Dmanthripragada@gibsondunn.com
Nharper@gibsondunn.com
Dcasazza@gibsondunn.com
Cmui@gibsondunn.com
Acox@gibsondunn.com
Lstanley@gibsondunn.com
Hmason@gibsondunn.com
Apayne@gibsondunn.com

*pro hac vice*

*Counsel for the United States Conference of Catholic Bishops*